UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| PAULA FERGUSON, | : |
|---|---|
| Plaintiff, | : |
| v. | : 3:08cv1389 (MRK) |
| UNITED HEALTH CARE, | : |
| Defendant. | : |

## RULING AND ORDER

In this case, Plaintiff Paula Ferguson has sued her former employer, United Health Care, for race and age discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. 46a-60 *et seq*. United Health Care has moved to stay the proceedings and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Connecticut Arbitration Statute, Conn. Gen. Stat. § 52-408 *et seq*. United Health Care also seeks attorney's fees and costs in relation to its motions. For the following reasons, the Court GRANTS in part and DENIES in part United Health Care's Motion to Stay Proceedings and Compel Arbitration and for Costs [docs. # 8, 10].

**I.**

For the purposes of these motions, there are very few facts in dispute between the parties. The following facts are drawn from the parties' briefing and Plaintiff's pleadings.[1] Ms. Ferguson was hired as a case worker by Oxford Health Plans in 2002. Oxford Health Plans later merged with

---

[1] On a motion to compel arbitration, a district court "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

United Health Care ("UHC") and Ms. Ferguson became a UHC employee. At the time of the merger, Ms. Ferguson received UHC's Employment Handbook, which contained its Arbitration Policy. She executed an electronic Employee Handbook Acknowledgment Form, agreeing that she had received and reviewed UHC's Employment Handbook, as well as an Arbitration Policy Acknowledgment Form, which states in relevant part:

> I acknowledge that I have received and been given the opportunity to review the attached copy of the UnitedHealth Group Employment Arbitration Policy (the "Policy"). *I understand that arbitration is the final and exclusive forum for the resolution of all employment-related disputes between UnitedHealth Group and me that are based on a legal claim.* I further understand that the employment related disputes subject to arbitration under the Policy include any claims arising under federal, state, or local statute, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment . . . . I agree to submit any and all employment related disputes based on a legal claim to arbitration, and agree to waive my right to a trial before a judge or jury in federal or state court in favor of arbitration under the Policy.

Def.'s Mot. to Stay and for Costs [docs. # 8, 10] Ex. D (emphasis added). The document clearly bears Ms. Ferguson's signature and she has not disputed the fact that she signed the form acknowledging her receipt and review of UHC's Arbitration Policy.

In October 2007, Ms. Ferguson applied for an internally-posted opening for a Clinical Manager position. She interviewed for the position, but was not offered the job. In December 2007, Ms. Ferguson filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging race and age discrimination arising out of UHC's failure to offer her the Clinical Manager position. UHC participated in the CHRO investigation, filing papers with the agency on at least two separate occasions.

After receiving a positive Merit Assessment Review, Ms. Ferguson filed this lawsuit on September 11, 2008. Upon receiving the complaint, UHC's counsel sent two letters to Ms. Ferguson,

informing her that UHC planned to compel arbitration pursuant to its Arbitration Policy. On October 17, 2008, Ms. Ferguson's counsel sent a letter to UHC's attorney stating that Ms. Ferguson would not voluntarily submit her claims to arbitration. UHC filed the present motions on October 20, 2008, seeking enforcement of the Arbitration Policy and asking the Court to stay the proceedings and compel arbitration.[2]

## II.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, expresses a "strong policy in favor of rigorously enforcing arbitration agreements." *Doctor's Assocs. v. Hamilton*, 150 F.3d 157, 162 (2d Cir. 1998); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (noting that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements").[3] The FAA provides that:

> A written provision in a . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . *shall be valid, irrevocable and enforceable*, save upon such grounds as exist at law or equity for the revocation of any contract.

---

[2] Ms. Ferguson resigned from her position at UHC on October 13, 2008. *See* Def.'s Mot. to Stay and for Costs [docs. # 8, 10] Ex. J.

[3] The Connecticut Arbitration Statute, Conn. Gen. Stat. § 52-408 *et seq.*, expresses a similar policy favoring arbitration. *See East Haven v. AFSCME, Council 15, Local 1662*, 212 Conn. 368, 371 (1989) ("This court has consistently favored arbitration as an alternative method for resolving disputes because it avoids the 'formalities, delay, expense and vexation of ordinary litigation.'"). Conn. Gen. Sat. § 52-408, provides as follows:

> An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract . . . or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally.

9 U.S.C. § 2 (emphasis added). Employment contracts are not exempt from the FAA's provisions. *See Circuit City Stores v. Adams*, 532 U.S. 105, 119 (2001) (holding that the FAA applies to employment contracts, save for the specific categories excluded in the statute); *accord EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the [FAA].").

Before compelling arbitration, a district court must decide two threshold questions: "(1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003) (employment dispute); *see also Discount Trophy & Co., Inc. v. Plastic Dress-Up Co.*, No. 3:03cv2167 (MRK), 2004 WL 350477, at * 3 (D. Conn. Feb. 19, 2004). "Courts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). However, courts may invalidate arbitration agreements on the basis of "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.*

Ms. Ferguson does not claim that UHC's Arbitration Policy is invalid or against public policy; nor has she identified any generally applicable contract defenses that would invalidate the contract. For example, she does not argue that her agreement to arbitrate was not supported by valid consideration or is unconscionable under state law. Ms. Ferguson also does not dispute that her claims in this action fall well within the language of the arbitration provision. And for good reason, because the Arbitration Policy expressly provides that it covers claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and state anti-discrimination laws. *See* Def.'s Mot. to Stay and for Costs [docs. # 8, 10] Ex. B.

Ms. Ferguson's sole objection to arbitrating her employment dispute rests upon UHC's failure to invoke the Arbitration Policy during the course of the CHRO proceedings. Based upon that failure by UHC, Ms. Ferguson argues that UHC has waived its right to enforce the Arbitration Policy, and that if the Court were to compel arbitration, she would be significantly prejudiced.

"[A] party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party." *PPG Indus. v. Webster Auto Parts*, 128 F.3d 103, 107 (2d Cir. 1997); *see also Doctor's Assocs.*, 107 F.3d at 131; *Sweater Bee By Banff, Ltd. v. Manhattan Indus.*, 754 F.2d 457, 461 (2d Cir. 1985) ("Litigation of substantial issues going to the merits may constitute a waiver of arbitration."). However, because of the strong federal policy in favor of arbitration, "waiver of arbitration is not to be lightly inferred." *PPG Indus.*, 128 F.3d at 107 (quotation marks omitted); *see also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25-27 (2d Cir.1995) ("Whether or not there has been a waiver is decided in the context of the case, with a healthy regard for the policy of promoting arbitration."). In determining whether a waiver has occurred, courts consider such factors as "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." *Id.* (upholding denial of motion to compel arbitration when defendant had engaged in extensive discovery and had filed substantial motions); *see also In re S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82 (2d Cir. 1998) (affirming denial of motion to compel arbitration because defendant had not raised arbitration clause as an affirmative defense in its answer and had engaged in discovery for over a year). Prejudice is defined as "inherent unfairness – in terms of delay, expense, or damage to a party's legal position – that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Doctor's*

*Assocs.*, 107 F.3d at 134; *see also Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 229-30 (2d Cir. 2001).

Ms. Ferguson argues that UHC engaged in protracted litigation during the CHRO proceedings, and that the case should be considered to have begun when she filed her CHRO complaint and not when she filed suit in this Court. She further asserts that she would be significantly prejudiced if the Court were to compel arbitration because she would be forced to arbitrate claims that she has already pursued with the CHRO.

The Court disagrees with Ms. Ferguson for several reasons. First, UHC had a very good reason for not attempting to compel arbitration during the CHRO proceedings – the Arbitration Policy explicitly states that it "does not preclude an employee from filing a claim or charge with a governmental administrative agency," such as CHRO. *See* Def.'s Mot. to Stay and for Costs [docs. # 8, 10] Ex. B. This is consistent with the Arbitration Policy Acknowledgment Form, which states that the employee agrees "to waive [his or her] right to a trial before a judge or jury in *federal or state court* in favor of arbitration under the Policy." *Id.* Ex. D (emphasis added); *see, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.* 514 U.S. 52, 57 (1995) (holding that it is the language of the contract that defines the scope of disputes subject to arbitration).

Thus, the Arbitration Policy did not prevent Ms. Ferguson from filing her CHRO complaint, and UHC could not have invoked the Policy to prevent her from doing so. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (quotation marks omitted)). Since it would have been futile for UHC to invoke the Arbitration Policy during the CHRO proceedings, it hardly makes sense to conclude now that the company waived its right

to compel arbitration because it failed futilely to invoke it during the CHRO proceedings.

Second, even if the Arbitration Policy were silent regarding administrative proceedings, UHC still could not have invoked the Arbitration Policy to stop the CHRO investigation once the complaint was filed. In *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002), the Supreme Court held that the Equal Employment Opportunity Commission ("EEOC") was not bound by private arbitration agreements. It explained that "[n]o one asserts that the EEOC is a party to the contract, or that it agreed to arbitrate its claims. It goes without saying that a contract cannot bind a nonparty." *Id.* Once a claim is filed, it is within the sole discretion of the EEOC whether to conduct an investigation, to pursue alternative dispute resolution, or to file claims in court against the employer. This is so regardless of any arbitration agreement between the employer and the employee. *See id.* at 296 ("An "employee's agreement to submit his claim to an arbitral forum" is not "a waiver of the substantive prerogative of the EEOC to enforce those claims for whatever relief and in whatever forum the EEOC sees fit."); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) ("An individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action."). This same logic would apply to CHRO investigations.

Since UHC could not have halted the CHRO proceedings once the agency decided to look into Ms. Ferguson's complaint, it cannot be that UHC waived its rights under the Arbitration Policy for failing to try to do so. As the First Circuit has explained, "[A]n employer cannot waive its right to arbitration by failing to raise the arbitration defense with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings. The employer's failure to initiate arbitration during the pendency of such proceedings merely reflects a desire to avoid inefficiency and

is not action inconsistent with a desire to arbitrate." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 16 (1st Cir. 2005); *see Santos v. GE Capital*, 397 F. Supp. 2d 350, 356 (D. Conn. 2005) (holding that participation in EEOC alternative dispute process did not constitute waiver); *accord Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222-23 (11th Cir. 2000); *Scaffidi v. Fiserv, Inc.*, No. 05-C-1046, 2006 WL 2038348, at * 4 (E.D. Wis. July 20, 2006); *Taleb v. AutoNation USA Corp.*, No. CV06-02013-PHX-NVW, 2006 WL 3716922, at *6 (D. Ariz. Nov. 13, 2006).

Third, the Arbitration Policy, by its terms, applies only to federal or state court litigation, and the undisputed facts show that UHC promptly raised the Arbitration Policy soon after Ms. Ferguson filed her complaint in this Court on September 11, 2008. UHC filed the present motions on October 20, 2008, before it had filed an answer or otherwise responded to the complaint. The parties had not yet filed their 26(f) report and had not embarked on any discovery in this action. Nor has UHC filed any other substantive motions in this case. Moreover, according to UHC, it contacted Ms. Ferguson's counsel regarding the Arbitration Policy and its intent to compel arbitration as early as October 6, 2008, a mere three weeks after the complaint was filed. And UHC filed the present motions three days after Ms. Ferguson stated that she would not voluntarily submit to arbitration. Thus, UHC timely invoked the Arbitration Policy shortly after the commencement of litigation and before engaging in any discovery or filing any substantive motions. *See PPG Indus., Inc.*, 128 F.3d at 107 ("[W]e have found that a party waived its right to arbitration where it engaged in extensive pre-trial discovery and forced its adversary to respond to substantive motions.").

Fourth, the Court cannot conclude that Ms. Ferguson has been prejudiced beyond the normal prejudice suffered by plaintiffs who do not wish to submit their claims to arbitration and who attempt to avoid doing so. *See Louis Dreyfus Negoce S.A.*, 252 F.3d at 230 ("Prejudice does not refer to

enforcing a bargained-for agreement, even where such enforcement will obligate a party to litigate in more than one forum."). Ms. Ferguson was aware of the Arbitration Policy as early as 2004. She certainly could have chosen not to file a complaint with the CHRO and to proceed instead directly to arbitration. *See Morales v. Rent-A-Center, Inc.*, 306 F. Supp. 2d 175, 181 (D. Conn. 2003) ("[A] person who signs a contract is presumed to know its contents and assent to them."). That she did not make that choice cannot be used as a basis for barring UHC from invoking the Arbitration Policy.

Under these circumstances, therefore, the Court concludes that UHC did not waive its right to invoke the Arbitration Policy. And because Ms. Ferguson does not contest the validity of the Arbitration Policy or dispute that her claims in this action fall within its scope, the Court will grant UHC's motions, will stay proceedings in this action, and will compel Ms. Ferguson to submit her employment claims to arbitration. *See* 9 U.S.C. § 3 (If the Court finds that an issue is arbitrable under a valid arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."); 9 U.S.C. § 4 (If the Court finds a valid arbitration agreement, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

UHC also seeks attorney's fees and costs in relation to the filing of its Motion to Stay Proceedings and Compel Arbitration and for Costs [docs. # 8, 10]. Cost-shifting is inappropriate in this case. First of all, UHC's counsel has provided no documentation as to the amount of attorney's fees and costs. Furthermore and more importantly, the Court sees no evidence that Ms. Ferguson has acted in bad faith or sought purposefully to delay enforcement of the Arbitration Policy. Therefore, the Court will not impose attorney's fees and costs on Ms. Ferguson.

**IV.**

For the foregoing reasons, United Health Care's Motion to Stay Proceedings and Compel Arbitration and for Costs [docs. # 8, 10] is GRANTED in part and DENIED in part. The motions are granted insofar as the Court orders Ms. Ferguson to present the claims she has asserted in this action to arbitration in accordance with the Arbitration Policy and the Court stays this case pending resolution of the arbitration of Ms. Ferguson's claims. The motions are denied to the extent they seek imposition of attorney's fees and costs. **The Clerk can administratively close this file, subject to reopening by either party upon conclusion of the arbitration.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: December 17, 2008.**